UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF MARGARET A.
FLUEGGE and SAFEVEST OAKLAND
ACQUISITION, LLC, on behalf of themselves
and others similarly situated,

          Case Number 19-10175
          Honorable David M. Lawson

    Plaintiffs,
v.

CITY OF WAYNE,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO FILE RESPONSE TO SUR-REPLY, GRANTING DEFENDANT'S MOTION TO DISMISS, AND DISMISSING AMENDED COMPLAINT WITH PREJUDICE

When local governments pass ordinances that affect the rights of individuals living and working within their borders, those laws must not violate rights guaranteed by the federal Constitution. If a person is harmed by such an unconstitutional local law, that person may seek redress from a federal court. But without an injury, a federal court has nothing to say about the person's complaint that the city or town may have passed an unconstitutional law. Advisory opinions — the "ghosts that slay" — are not allowed. *Vonderhaar v. Vill. of Evendale, Ohio*, 906 F.3d 397, 399 (6th Cir. 2018) (quoting Felix Frankfurter, *A Note on Advisory Opinions*, 37 HARV. L. REV. 1002, 1008 (1924)).

The City of Wayne, Michigan, enacted a set of property maintenance ordinances under its police power intended to ensure that its aging housing stock and residential units are kept up to code. If a homeowner wants to sell, or a landlord wants to rent, he or she must obtain a certificate of compliance from the City's building and engineering department. One obtains a certificate by paying a fee and scheduling (and passing) an inspection. The plaintiffs believe that the inspection

requirement amounts to a warrantless search that violates the Fourth Amendment, and conditioning the sale and right to rent on consenting to inspections violates the Due Process Clauses of the Fifth and Fourteenth Amendments. However, the plaintiffs' premises were never subjected to an unlawful search, and they have not identified any likelihood that they would be subjected to one in the future. With no such injury-in-fact, they have no standing to obtain advice from this Court on the ordinances' constitutionality. Therefore, the Court will dismiss the case for want of subject matter jurisdiction.

I.

The plaintiffs' complaint takes aim at two of the City's ordinances. Chapter 1484 requires the seller of a residence to obtain a certificate of compliance before completing the sale. City of Wayne Code of Ordinances § 1484.04 (Ordinance). That is accomplished by making an application, arranging for an inspection, and paying a fee. *Id.* § 1484.05. A building official then inspects the property under guidelines established by the International Property Maintenance Code. The purpose of the inspection, says the City, is "to prevent the spread of residential blight, to safeguard life or limb, health, property, and public welfare." *Id.* § 1484.06. If an inspection turns up code violations, the owner can obtain a certificate of compliance after making the necessary repairs. *Id.* §1484.07. Or the owner may obtain a conditional certificate by striking a deal with the buyer to make the repairs. *Id.* §1484.08.

If there is a disagreement with a building official, the "aggrieved" person may appeal to the Residential Dwelling Board of Appeals by submitting a timely written request and paying a fee. On appeal, the person has a right "to present witnesses, testimony or proof, and to be represented by counsel." *Id.* at §1484.20. The Appeal Board is authorized to "hear and decide

appeals where it is alleged by the appellant that there is error in regard to the interpretation of [any part of the Ordinance] . . . including the standards of approval." *Id.* §1484.21.

The plaintiff's decedent, Margaret Fluegge, owned a home on Chamberlain Street in the City of Wayne. She put the house up for sale in May 2017, about five months before she died in September of that year. Before selling, she paid a $250 city inspection fee and arranged for an inspection, which took place on May 18, 2017. Her son, Scott Fluegge, the personal representative of Margaret's estate, was present. No one objected to that inspection or to a second, follow-up inspection conducted shortly thereafter. The City issued a certificate of compliance, and she sold the home on June 6, 2017.

The second ordinance, Chapter 1486, deals with landlords and rental units. The ordinance requires owners to register their property as a rental and obtain a certificate of compliance, which requires a city inspection. Ordinances §§ 1486.07, 1486.12. The owner must pay separate fees for registration and inspection, which are good for three years. The inspection, once again, is conducted by a city building official. But before the official can inspect, he or she "shall indicate to all occupants, prior to his or her entry into the unit, that the occupant may prohibit such building official's entry without a search warrant." *Id.* § 1486.13(b). And disagreements with a building official's determinations may be appealed, after paying a refundable fee, to the Construction Board of Appeals. *Id.* § 1486.20.

Plaintiff Safevest was incorporated in Delaware in August 2018. That same month, it purchased two houses in the City, intending to rent them. Safevest registered the properties on December 7, 2018, naming Garner Properties & Management Company as the property manager. When Safevest registered the properties, neither had a valid certificate of compliance. On December 10, 2018, the City issued violation notices for both Safevest properties, eventually

informing the company, when an errant email address was corrected, that the certificates had expired, that it must pay inspection fees, and that it must schedule an inspection with the City. The management company then paid the registration and inspection fees for the Safevest properties on January 3, 2019.

Detecting a defect in the ordinances, the plaintiffs filed a putative class action complaint in January of last year, alleging violations of the "unconstitutional conditions doctrine" (Count I), and the Fourth Amendment (Count II), unjust enrichment (Count III), and violations of 42 U.S.C. § 1983 (Count IV). The City inspected the properties on February 6, 2019 and found numerous code violations. Safevest's property manager arranged for the inspections and allowed them without objection or protest.

After a case management conference, the Court allowed the plaintiffs to file an amended complaint and permitted discovery on the jurisdictional issue. The defendant then filed a motion to dismiss alleging no subject matter jurisdiction because the plaintiffs lack standing to raise their claims, and the City is entitled to judgment on the pleadings because the plaintiffs have not stated viable claims.

By the time the defendant filed its motion, neither properties had received certificates of compliance, but both actively were being rented. The City has not fined or prosecuted Safevest for refusing an inspection or for renting its properties without a certificate.

II.

The defendant brought its motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1) and 12(c). Rule 12(b)(1) authorizes the dismissal of a civil action "for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The issue of subject matter jurisdiction lurks in every federal case, because the Constitution authorizes federal courts

to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

"Cases" may be brought by persons who actually have been wronged, that is, who have "standing" to press a claim when they can show that they have a "personal stake in the outcome of the controversy" at the outset of litigation. *Baker v. Carr*, 369 U.S. 186, 204 (1962). Without proof of actual skin in the game, the lawsuit is no more than "a vehicle for the vindication of the value interests of concerned bystanders" who have no right to ask a federal court its advice about the validity of a local law. *United States v. SCRAP*, 412 U.S. 669, 687 (1973).

To establish standing, a plaintiff must show that he or she has suffered an "injury in fact," that was caused by the defendant's conduct, and that a favorable decision will redress that injury. *Town of Chester v. Laroe Estates, Inc.*, --- U.S. ---, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016)). The first requirement requires proof of an actual injury, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Ibid.*

In Count II of their amended complaint, the plaintiffs assert that the pre-sale and rental ordinances allow building officials to enter and inspect houses and rental units without a search warrant. That, they say, would violate the Fourth Amendment. But they do not allege that such an intrusion actually happened to them, and the City offered evidence that both plaintiffs consented to the inspections that occurred. And there is no evidence that the City's building officials ever conducted compliance searches without the occupant's consent or that it has any plans to do so.

Before discussing whether an actual injury occurred (or was "imminent"), the Court must address the plaintiffs' objection to the City presenting evidence beyond the allegations in the amended complaint. The plaintiffs believe that the Court must limit its review to the statements in the amended complaint and the answer. And insofar as the defendant also asks for a judgment on the pleadings, the plaintiffs are correct. But the point under discussion is the City's challenge to subject matter jurisdiction under Rule 12(b)(1), where courts have "wide discretion" to consider affidavits and documents "to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The plaintiff has the burden to prove the jurisdictional facts, *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014), and both sides have had the opportunity to present evidence on that issue. The Court "has the power to weigh [that] evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60.

That evidence amply demonstrates that inspections occurred. But did the plaintiffs consent to them? When the City put the question directly to the plaintiffs in a request to admit, they dissembled, insisting that it was "impossible to refuse consent to the City's representatives and agents entering the subject property under the inspection scheme run by the City that mandate[d] warrantless searches without any pre-compliance review procedures and ma[de] it unlawful to sell their property if such inspections [were] refused." But it is plain to see that the plaintiffs arranged for the inspections and let the building officials into the properties to inspect them. With consent, an administrative search without a warrant is constitutional. *See City of Los Angeles, California v. Patel*, --- U.S. ---, 135 S. Ct. 2443, 2452 (2015). If the consent is valid, no Fourth Amendment injury occurs.

The plaintiffs raise two points: the inspections are "warrantless" (and therefore unconstitutional) because there is no opportunity for precompliance review, and the consent cannot be voluntary because it is coerced by a scheme that requires the property owners to give up their rights to be free from unreasonable searches as a condition of selling or renting their property.

The first argument is based on *Patel*, where the Supreme Court held that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Ibid.* The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. As a general rule, a warrantless search of a home or business is presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). But there are exceptions.

One exception to the warrant requirement focuses on a search "conducted for a 'special need' other than to investigate criminal wrongdoing." *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018). That includes "administrative searches designed to assure compliance with building codes, including codes designed to prevent buildings from becoming dangerous to tenants or neighbors." *Benjamin Trust v. Stemple*, 915 F.3d 1066, 1069 (6th Cir. 2019) (citing *Patel*, 135 S. Ct. at 2452; *Camara v. Mun. Court*, 387 U.S. 523, 534 (1967)). Under this administrative-search exception to the warrant requirement, some procedural demands are relaxed. But before a municipal official may "conduct[] a warrantless search of a building or property on the ground that it has become dangerous, the government must give the owner 'an opportunity to obtain precompliance review before a neutral decisionmaker.'" *Ibid.* (citing *Patel*, 135 S. Ct. at 2452). Without the opportunity for precompliance review, there exists an "intolerable risk" that

searches authorized by an ordinance will exceed statutory limits or be used as pretext to harass individuals. *Patel*, 135 S. Ct. at 2452-53.

The City's ordinances provide those opportunities. Under the pre-sale ordinance, there is no danger that a building official will seek or demand an unauthorized entry into a seller's home. The process, after all, is initiated by the homeowner applying for a certificate of compliance. Ordinance § 1485.05. To get the certificate, the homeowner must "arrange for inspection" of the house. *Ibid.* It is difficult to conceive of a scenario where the inspection would occur before the homeowner would "arrange" for it, and the plaintiffs do not suggest otherwise. And if the homeowner disputes the need for an inspection or the City's authority to conduct one under the ordinance, he or she can appeal to the Residential Dwelling Board of Appeals. *Id.* § 1484.20.

The plaintiffs contend that the appeal right granted by the ordinance is limited to after-the-fact decisions and actions by the building department. But there is no such limiting language in the ordinance. Rather, the Board of Appeals is given the "power" to address any allegation of "error in regard to the interpretation of the [ordinance], including the standards of approval as contained" in the section dealing with inspections. *Id.* § 1484.21.

The rental ordinance requires landlords to register their property as a rental and to designate a "local agent" who will be responsible for "providing access" to the rental units "for making inspections necessary to ensure compliance" with the building codes. *Id.* § 1486.07. A landlord cannot rent a unit without obtaining a certificate of compliance, and the property must be inspected before one is issued. But the ordinance contains appeal rights similar to the pre-sale ordinance. And since renters would not be responsible for arranging the inspections, the ordinance contains an additional proviso requiring a building official to advise "all occupants" of the rental unit that

-8-

they "may prohibit" the "official's entry without a search warrant" before any inspection can take place. *Id.* § 1486.13.

These provisions satisfy *Patel*'s "minimal requirement" of "precompliance review before a neutral decisionmaker." 135 S. Ct at 2452. There is no evidence that the plaintiffs sought any such review before they consented to the inspections, much less were denied that opportunity. They have not alleged that they suffered an actual injury by the application of these ordinances. Without an injury, there is no standing. *Vonderhaar*, 906 F.3d at 400-01.

The plaintiffs contend that the consent was tainted because it was coerced. They reason that the only way they could obtain certificates of compliance was by paying a fee and allowing a "warrantless" inspection. And without the certificates, they were legally barred from selling or renting their properties. By conditioning the issuance of a certificate on a waiver of rights under the Fourth Amendment, they argue, the ordinances violate the plaintiffs' rights under the Due Process Clauses of the Fifth and Fourteenth Amendments. That is the substance of Count I of the amended complaint.

The Court considered the same argument when plaintiffs' counsel advanced it in an earlier case he brought against another city's property inspections ordinances. *See MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 413 (E.D. Mich. 2019). The unconstitutional conditions doctrine, the Court explained, cabins the government's coercive power "and as such finds its origins as a species of substantive due process." *Ibid.* (citing Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 HARV. L. REV. 1413, 1415 & n.3 (1989)). It says that "a government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether." *Ibid.* (citing *Amelkin v. McClure,* 330 F.3d 822, 827-28 (6th Cir. 2003)). An analogy can be found in at-will employment

cases: although an employer may fire an at-will employee for reasons that are entirely arbitrary or for no reason at all, it may not do so for an illegal reason. *See Stewart v. Everyware Glob., Inc.*, 68 F. Supp. 3d 759, 763 (S.D. Ohio 2014). Governments are subject to a similar limitation when conferring benefits. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . .").

That doctrine does not fit the facts here. First, "[s]ubstantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments." *MS Rentals*, 362 F. Supp. 3d at 414 (citing *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006)). Where, as here, the plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available, *see County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The "explicit textual source" of plaintiff's due process claim is the Fourth Amendment. That is what governs here. And the plaintiffs have no standing to assert a Fourth Amendment claim.

Moreover, the ordinances contain no requirements that a property owner waive rights under the Fourth Amendment as a condition of obtaining a certificate of compliance. The Fourth Amendment prohibits only "unreasonable searches," and inspections conducted by consent or when the owner is given the "opportunity" for a precompliance review by a neutral authority are reasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (citing *Vale v. Louisiana*, 399 U.S. 30, 35 (1972)); *Patel*, 135 S. Ct. 2453.

One might read the amended complaint as challenging the City's right to inspect residential property that an owner wants to rent or sell, and to charge a fee. That challenge has no legs. Consenting to inspections to ensure the property's compliance with building codes as a condition of selling or renting "becomes a run-of-the-mine exercise of the city's police power." *Benjamin*, 915 F.3d at 1068. And "it is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities." *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985) (citations omitted). Charging a reasonable fee for an inspection does not come close to government overreach. No actual injury can be found here.

Because the plaintiffs have suffered no actual injury, they have no standing to raise an as-applied challenge to the City's property inspection ordinances. Their facial challenge fails as well. As in *Vonderhaar*, "[t]hat same lack of harm and the same lack of risk of harm — past, present, or future — also bars them from bringing a facial Fourth Amendment challenge." *Vonderhaar*, 906 F.3d at 401-02 (citations omitted).

The plaintiffs include separate counts in their amended complaint for unjust enrichment (and restitution) (Count III) and violations of 42 U.S.C. § 1983 (Count IV). Unjust enrichment occurs when one party — say, a defendant — receives a benefit from another — the plaintiff — and retention of that benefit causes some inequity. *Bellevue Ventures, Inc. v. Morang-Kelly Inv., Inc.*, 302 Mich. App. 59, 64, 836 N.W.2d 898, 901 (2013) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652 (1991)). When unjust enrichment is proved, restitution is the remedy. *Wright v. Genesee County*, 504 Mich. 410, 418, 934 N.W.2d 805, 809 (2019). But first it must be shown that allowing the defendant to retain the benefit would be unjust. *Ibid.* The plaintiffs premise their claim for restitution on the idea that the City required them to pay

registration and inspection fees through an unconstitutional ordinance. But here again, they have not shown a concrete, actual injury because there was no inequity stemming from the City's fee requirements. The plaintiffs have no standing to raise this claim.

Section 1983 does not create rights itself; it authorizes a person to bring a claim against a person who, acting under color of law, violates one's rights established elsewhere, that is "by the Constitution and laws" of the United States." *See Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019). The plaintiffs do not dispute that this count of their amended complaint depends on the viability of their claimed violations of the Fourth, Fifth, and Fourteenth amendments. Because they have no standing to raise the claims in Counts I and II, the separate count invoking section 1983 must be dismissed as well.

### III.

The plaintiffs have not demonstrated an invasion of any legally protected interest that is concrete or particularized, either actual or imminent. Absent that "irreducible constitutional minimum" required for standing, *Lujan*, 504 U.S. at 560, the plaintiffs have not established subject matter jurisdiction under Article III of the Constitution.

Accordingly, it is **ORDERED** the defendant's motion to file a response to the plaintiffs' sur-reply (ECF No. 29) is **GRANTED**.

It is further **ORDERED** that the defendant's motion to dismiss (ECF No. 13) is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

                                                  s/David M. Lawson  
                                                  DAVID M. LAWSON  
Date: March 2, 2020                             United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 2, 2020.

                              <u>s/Susan K. Pinkowski</u>
                              SUSAN K. PINKOWSKI